**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JAMES R. PLEAS, SR.,**

**Petitioner,**

**vs.**

**CASE NO. 4:07cv292-MP/WCS**

**WARDEN JAMES SAPP,**

**Respondent.**

**_____________________________/**

# REPORT AND RECOMMENDATION

This is an amended petition for writ of habeas corpus filed by James R. Pleas, Sr. pursuant to 28 U.S.C. § 2254. Doc. 6. Petitioner challenges his convictions after a jury trial for battery and robbery, case number 98-3153-AF, and his convictions after a no contest plea for burglary of a conveyance and robbery, case number 98-3154-AF, all in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida. Respondent filed an answer. Doc. 12. Respondent concedes that the petition was timely filed. *Id*., p. 23. Petitioner was afforded an opportunity to file a traverse but has not done so.

**State Procedural History**

This § 2254 petition challenges convictions in two Florida criminal cases. The first is case number 98-3153-AF. In that case, Petitioner was charged with robbery on July 31, 1998, causing bodily injury in violation of FLA. STAT. §782.051(1), a life felony, and committing the robbery (purse snatching) in violation of FLA. STAT. § 812.13(2), a second degree felony. Doc. 12, Ex. A, R. 1-2.[1]

The second case charged offenses occurring three days earlier, on July 28, 1998. Case number 98-3154-AF. The charges were burglary of a conveyance with a person assaulted in violation of FLA. STAT. § 810.02(2)(a), a first degree felony, and robbery (purse snatching) in violation of FLA. STAT. § 812.13(2)(c), a second degree felony. Ex. A, R. 364.

On April 28, 2000, Petitioner's attorney filed a motion to suppress his confession, arguing that the confession was involuntary for lack of a proper waiver of *Miranda* rights and because Petitioner was mentally incapacitated due to an attempted suicide. Ex. A, R. 96-98 (motion). A hearing was held on this motion, apparently on two separate days. Ex. A, R. 182-215, 633-813 (transcripts). The motion was denied. Ex. A, R. 785-789 (excerpt from hearing).

Case number 98-3153-AF went to trial. Ex. B (trial transcript). Petitioner was found guilty of battery (a lesser included offense) and robbery (as charged). Ex. A, R. 217-218.

---

[1] The state record has been filed as paper exhibits to document 12. The record has not been scanned into the electronic docket. Hereafter references to exhibits will be to those exhibits followed by the printed page number of the record in the lower right hand corner if available, or otherwise, to the page number of the particular document.

At the time of sentencing on December 20, 2000, in case number 98-3153-AF, Petitioner entered a nolo contendere plea in case number 98-3154-AF to burglary of a conveyance (a lesser included offense) and robbery (as charged). Ex. C, p. 5. This plea was offered as a part of an agreement for sentencing in that case and in case number 98-3153-AF. *Id*., p. 3. Petitioner agreed that he would be sentenced as a prison releasee reoffender under Florida law in case numbers 98-3153-AF and 98-3154-AF to concurrent term of 15 years.[2] *Id*., pp. 3-6.

On January 22, 2001, Petitioner, through counsel, filed a motion to withdraw his plea in case number 98-3154-AF. Ex. A, R. 349-350. Petitioner stated he was "not alleging fraud, misrepresentation, coercion, duress or confusion." *Id*., R. 349. He said that he wanted to "provide information as to [the] real perpetrator of the crime and allow the Court [sic] to prosecute the same." *Id*. The motion was denied. *Id*., R. 353-354.

Petitioner timely filed direct appeals from both convictions. Ex. A, R. 333. His attorney filed an *Anders*[3] brief. Ex. D. Petitioner was given an opportunity to file a pro se brief, but did not do so. Ex. E. Petitioner's convictions were affirmed with a remand to correct the sentence for count two in case number 98-3154. Ex. G.

Petitioner filed a Rule 3.850 motion on May 12, 2003. Ex. I, R. 182 (the smaller printed number in the lower right corner). An amended Rule 3.850 motion was filed on

---

[2] It was also part of the agreement for Petitioner to enter no contest pleas in three other pending criminal cases that are not involved in this § 2254 petition: case numbers 97-4341 (violation of probation), 98-3280, and 98-4923. *Id*., p. 3. Petitioner agreed to receive a 5 year sentence in each of the other three cases, not as prison releasee reoffender sentences, to run concurrently with each other, but consecutively to the 15 year sentence, for a total of 20 years. *Id*., pp. 6-8.

[3] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

September 27, 2004, by counsel for Petitioner. *Id*., R. 251. The Rule 3.850 motion, as amended, was denied by the trial court on January 24, 2006, in a lengthy written order. *Id*., R. 322-328.

Petitioner appealed the denial of his Rule 3.850 motion. *Id*., R. 329. The denial of the motion was affirmed on appeal without opinion. Ex. Q.

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court. 28 U.S.C. §§ 2254(b)(1), (c)." O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999). To properly exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented to the state courts." Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (*citing* Picard). If a claim was not fairly presented but is procedurally barred from further state court review,[4] Petitioner must demonstrate cause for the default and actual prejudice, *or* demonstrate that the constitutional violation has probably resulted in conviction of an innocent person. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).

For claims that were properly exhausted and adjudicated in state court, this court's review is limited. "[A] determination of a factual issue made by a State court

[4] Procedurally defaulted claims are considered technically exhausted because state court remedies no longer remain "available." The court therefore refers to "fairly presented" claims as having been *properly* exhausted, to distinguish them from claims exhausted by procedural default. *See* O'Sullivan, 526 U.S. at 848, 119 S.Ct. at 1734.

shall be presumed to be correct," and Petitioner has "the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1);

Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted).

Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that

the adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding."  § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is

satisfied "only if it is shown by clear and convincing evidence that the state court's

presumptively correct factual findings do not enjoy support in the record."  Lomholt v.

Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state

court's adjudication of the merits of the federal claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States."  § 2254(d)(1).  "[C]learly

established Federal law, as determined by the Supreme Court of the United States,"

refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower

federal courts may be considered to the extent that they demonstrate how those courts

applied Supreme Court holdings.  Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir.

2003) (citations omitted); Carey v. Musladin, 549 U.S. 70, 127 S.Ct. 649, 653, 166

L.Ed.2d 482 (2006).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495,

1519-1520, 146 L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850. *See also*, Panetti v. Quarterman, __ U.S. __, 127 S.Ct. 2842, 2858-2859, 168 L.Ed.2d 662 (2007) (discussing the unreasonable application standard) (citing Williams, other citations omitted).

"Avoiding these pitfalls [described in Williams v. Taylor] does not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." Holland v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159 L.Ed.2d 683 (2004).

The basic law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850. Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001). *See also* Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing Chandler). There are no rigid requirements or absolute duty to investigate a particular defense. Fugate v. Head, 261 F.3d at 1217.

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case. Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

*Id*.

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.

In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007), *quoting*, Hill.  The "prejudice" inquiry in the context of a guilty plea "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial."  Hill, 474 U.S. at 59, 106 S.Ct. at 370.  In other words, the question of whether a defendant would have insisted upon going to trial had attorney error not occurred with respect to the guilty plea will turn in large part upon whether the defendant might reasonably have achieved a more favorable outcome had he gone to trial.  United States v. Rosario, 902 F.2d 55, 58 (D.C. Cir.), *cert. denied*, 498 U.S. 942 (1990).

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.  Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.  *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received").

Hill, 474 U.S. at 59, 106 S.Ct. at 370-371.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."

466 U.S. at 697, 104 S.Ct. at 2069. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

A state court's adjudication of an ineffective assistance claim does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . . Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams). "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground one, case number 98-3153-AF**

Petitioner asserts that his trial counsel was ineffective for failing to request a jury instruction on confessions, and for failing to object that the instructions that were given were in error. Petitioner argues that the proper instruction was important because the centerpiece of the trial was his confession. He contends that the confession "never happened," but if it did, it was invalid due to his attempted suicide and the fact that he was under the influence of medication. Doc. 6, p. 4. Respondent concedes that Petitioner exhausted state court remedies as to this claim, and addresses the merits. Doc. 12, p. 24.

This claim concerns Florida standard criminal jury instruction 2.04(e), now instruction 3.9(e). It is undisputed that this instruction was not read to the jury. Ex. I, R. 322. In its order denying Petitioner's Rule 3.850 motion, the trial court set forth the text of this omitted instruction:

> A statement claimed to have been made outside of this Court has been placed before you. Such a statement *should* always be considered with caution and be weighed with great care to make certain it was freely and voluntarily made
>
> Therefore, you must determine from the evidence that the Defendant's alleged statement was knowingly, voluntarily and freely made.
>
> In making this determination, you *should* consider the total circumstances including but not limited to
>
> 1. whether when the Defendant made the statement he had been threatened in order to get him to make it, and
>
> 2. whether anyone had promised him anything in order to get him to make it.
>
> If you conclude the Defendant's out of Court statement was not freely and voluntarily made, you *should* disregard it.

*Id*., R. 323 (emphasis by the court); Harris v. State, 438 So. 2d 787, 795 (Fla. 1983) (setting forth the text of this instruction), *cert. denied*, 466 U.S. 963 (1984).

The trial court then explained why Petitioner had not established ineffective assistance of counsel as defined by Strickland with respect to this omitted jury instruction. The explanation is very detailed and covers all of the trial evidence and the evidence relating to the voluntariness of the confession. Ex. I, R. 322-326. The state court reasoned that there was no prejudice to the outcome for a lack of this instruction, stating: "There is no reasonable probability that the jury would not have convicted the defendant had the instruction been given." *Id*., R. 323. The court pointed out that the

instruction had a "very weak application to the facts," as there was no evidence of any threats or promises made to induce the confession. *Id*. The court said that it was arguably better not to have the instruction, as it diverted the jury's attention to "threats" and "promises" as to which there was no evidence. *Id*., R. 323-324. The instruction did not apply at all to the evidence presented, said the court, which related to Petitioner's mental and physical state, the alleged suicide attempt, the alleged overdose of pills, and the alleged nausea experienced by Petitioner at the time of the statement. R. 323. There was "no evidence to logically connect defendant feeling sick to his stomach as affecting his ability to give a knowing, voluntary, and freely made statement," and "the only witness to testify on circumstances affirmatively showing that the statements were made knowingly, freely, and voluntarily, *at the time they were actually made*, was Karen Brown,"[5] and her testimony "stood unrebutted." *Id*. The court also noted that the instruction used the word "should," and therefore was a "soft" instruction. *Id*.

The court also pointed out that trial counsel made a general attack upon the confession, arguing that the confession was not made, or not made to that extent, and "asked the jury to doubt the truth of Karen Brown's testimony about the statement." *Id*., R. 324. The court found this to have been a reasonable strategy as the evidence of Petitioner's guilt was strong, and the evidence that his confession was incompetent due to drug overdose was weak. *Id*., R. 324-325. The victim of the purse snatching testified that at 1:15 a.m. on July 31, 1998, one black man was driving a motor vehicle past her, and a black man in the passenger seat grabbed her purse. R. 324. Later that morning,

---

[5] Defendant was interviewed by Investigator Karen Brown, and she took his confession. R. 325.

at 10:00 a.m., Petitioner tried to cash one of the victim's checks and he was personally recognized by the teller, and she had his driver's license with his photo on it. R. 324-325. Petitioner's fingerprint was on the check. R. 325. The court concluded: "Given the above facts already established beyond any contest, those circumstances alone were very strong pointing to guilt." *Id*.

The trial court further stated that Petitioner's suicide attempt was on August 2, 1998, and Petitioner was arrested and taken to the jail. R. 325. This was in the early morning hours of that day. *Id*. Petitioner only had superficial scratches on his wrist, and "no pills were mentioned." *Id*. At 3:20 a.m., Petitioner was interviewed and was "very responsive to lengthy medical information requested." *Id*. Petitioner complained of stomach pain at 9:00 a.m., and "hung over the sink." *Id*. He was interviewed by Karen Brown at 10:50 a.m. *Id*. Brown, said the court, did not supply Petitioner with any details of the robbery, yet Petitioner supplied details that only a person involved in the robbery could have known. *Id*. Petitioner did not tell Brown that he was sick, and he was rational, did not slur his speech, was not handcuffed, and said he wanted to speak. *Id*. At 11:20 a.m., after the interview, Petitioner vomited. *Id*. An empty pill bottle was found in Petitioner's property. *Id*. This was presumably in the early morning hours when he was first brought to the jail. The court also said: "At the evidentiary hearing, defense counsel could not present evidence that defendant had taken the pills in a suicide attempt, because his own retained experts told him that defendant would have died, if that was what happened." *Id*. The court reasoned: "Clearly, trial counsel was left ethically with only one weak strategy and that was to raise a more general attack on Brown's credibility about whether any confession occurred." *Id*. The court concluded:

"Under the totality of the evidence available at trial, and the expert information known to trial counsel, it was not deficient performance, and most certainly not prejudicial under *Strickland*, for defense counsel to omit requesting Instruction 2.04(e) in this particular case." R. 325-326.

Other than make the claim, Petitioner has presented nothing further. Petitioner has not rebutted the presumption of correctness of the state court's factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor has Petitioner shown that the state court's adjudication of the merits of the federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground two, case number 98-3153-AF**

Petitioner asserts that his attorney was ineffective for failing to use two alibi witnesses. Doc. 6, p. 4. Petitioner identifies only one alibi witness, however: Dyshawn Barber. *Id*. In his Rule 3.850 motion, Petitioner identified both Dyshawn Barber and Harvey Merritt. Ex. I, R. 188-189.

Respondent argues that Petitioner procedurally defaulted this claim as to Dyshawn Barber. Doc. 12, p. 28. Respondent argues that any claim concerning Dyshawn Barber was abandoned during the Rule 3.850 hearing. *Id*., pp. 29-30.

Petitioner was represented by counsel, Deborah Whisnant, at the Rule 3.850 hearing. Ex. J, p. 3. Petitioner was undergoing recross examination by the prosecutor, and the prosecutor asked him about Dyshawn Barber. *Id*., p. 62. Petitioner's attorney objected that the question was outside the scope of her direct. *Id*. That objection was

overruled. *Id*., p. 63. The prosecutor then said: "If it's withdrawn then I won't ask the questions." *Id*. The court asked Petitioner's attorney if "that one" was withdrawn, meaning the claim that counsel was ineffective with respect to alleged alibi witness Dyshawn Barber, and counsel said: "Yes." *Id*. Counsel then said that "actually, it's not withdrawn, the whole grounds. It's just, I didn't pursue *that particular witness*, so I'm not – I don't want to use the word withdrawn." *Id*. (emphasis added). Counsel explained that she had not "asked about it," and "there's no evidence of it. In other words, there's nothing to support any allegation." *Id*.

Consequently, counsel for Petitioner did not withdraw ground two with respect to alleged alibi witness Dyshawn Barber. She simply elected not to put on any evidence to support the claim and thereby abandoned the claim. Section 2254(e)(2) provides:

> **(2)** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> **(A)** the claim relies on--
>
> **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Petitioner has not shown that any of these exceptions apply, and thus this claim of ineffectiveness, to the extent that it depends upon Dyshawn Barber as an alibi witness, has been abandoned for lack of evidence. Petitioner cannot

bring the claim again, and it is procedurally defaulted. This court cannot reach the merits of the claim because Petitioner has not shown cause[6] or prejudice for his default.

Petitioner did present evidence about another alleged alibi witness, Harvey Merritt. Ex. J, pp. 53-62. The trial court did not mention the second half of this claim concerning Harvey Merritt, perhaps thinking that all of ground two had been withdrawn. Ex. I, R. 322-327. Respondent has addressed the merits of this claim based upon the state record. Doc. 12, pp. 33-35. The state record proves to be adequate for this court to resolve the claim concerning the failure to call Harvey Merritt as a witness.

As noted above, Harvey Merritt is not mentioned by name in ground two before this court, and Petitioner has alleged nothing to support such a claim here. The claim as set forth in the Rule 3.850 motion is that Investigator Brown said that Petitioner confessed that "he and Merritt committed the robbery." Ex. I, R. 189. In his Rule 3.850 motion, Petitioner argued that Merritt would have testified that "he never participated in the alleged robbery with the Defendant nor does he have any knowledge that Defendant did." *Id*. Thus, had Petitioner's counsel called Merritt as a witness, argues Petitioner, he would have shown that Brown's description of Petitioner's confession was not credible since Merritt denied complicity in the robbery and the state dropped charges against him. *Id*.

---

[6] Petitioner has not asserted error of counsel as cause, but an error by counsel in state post-conviction proceedings cannot constitute "cause" for the default since there is no right to counsel in post-conviction proceedings. Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1720, n. 5, 118 L.Ed.2d 318 (1992); Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2566, 115 l.Ed.2d 640 (1991); Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 2771, 106 L.Ed.2d 1 (1989); Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982); Toles v. Jones, 888 F.2d 95, 99-100 (11th Cir. 1989) and cases cited.

At a motion hearing on July 7, 1999, prior to trial, Petitioner's trial counsel at that time, Cheryl Gentry, argued her motion to show cause because Harvey Merritt, who had been arrested and charged as Petitioner's co-defendant, failed to appear at his deposition. Ex. A, R. 62. Ms. Gentry told the court that she had received a letter from Merritt's stepfather telling her to "just butt out and leave this man alone, because he's told everybody he doesn't want to be involved, including my private investigator, and that's what they expect, and just leave him alone." *Id*., R. 62-63.

Gentry said that Petitioner faced a mandatory life sentence as a prison releasee reoffender, and she needed to speak with Merritt. *Id*., R. 63. She asked the court to issue a writ of attachment so that Merritt could be arrested. *Id*. The court asked if she thought Merritt had anything favorable to say on behalf of Petitioner, and she said Merritt would be a "very unpredictable witness," and she was "very concerned that he might be a harmful witness, in which case I would certainly like to be able to depose him so I can prepare for cross examination." *Id*., R. 63-64. When the court suggested that Gentry simply obtain an order to exclude Merritt as a witness, she said she was uncertain what he might say, but was happy to have him excluded if Petitioner agreed. *Id*., R. 64. She spoke with Petitioner off the record and then told the court that *Petitioner agreed that Merritt could be excluded as a witness*. *Id*., R. 65 (emphasis added).

The prosecutor then said that he had not talked with Merritt either, but had disclosed him as a state's witness, and he thought that exclusion "would be too harsh of a remedy without other measures being taken." *Id*. The state court noted that Petitioner then had five criminal cases pending, all over a year old, and she said it was

time for harsh remedies to bring these cases to conclusion. *Id*., R. 66. She suggested exclusion of Merritt to get the issue settled. *Id*. The prosecutor said that if Merritt had not honored a subpoena, he should be held in contempt. *Id*., R. 67. The court noted that Petitioner had confessed, his fingerprint was on the check, and she did not "find any of this very complicated at all." *Id*., R. 68. Finally, after lengthy argument about the way the case had not progressed, the court issued a show cause order to compel Merritt to attend his deposition. *Id*., R. 77.

At the Rule 3.850 hearing on May 4, 2004, over five years later, Petitioner testified that he told his second attorney, John Kenny, that he had an alibi witness named Harvey Merritt. Ex. I, p. 52. Petitioner testified that he told Kenny that he wanted Merritt to testify, and said that Merritt was his relative. *Id*., p. 55. On cross examination, counsel for the state sought to explore what it was Petitioner allegedly told Kenny about Merritt's expected alibi testimony. In response to a leading question, Petitioner *denied* that he had told Kenny that he expected Merritt to testify "that he [Merritt] had done the crime," and not Petitioner. *Id*., pp. 57, 61.[7] Petitioner's counsel then objected to this line of questioning, arguing that "it doesn't matter the reason he wanted him [Merritt]," and the court, correctly applying the two part test of ineffectiveness under Strickland, said: "Well, it does." *Id*., p. 58. Then on cross, Petitioner said that he thought that Merritt would have testified that he [Merritt] did not participate in the robbery, and that he had no knowledge as to whether Petitioner did. *Id*., p. 61.

---

[7] Respondent filed a copy of Ex. I that contained two sets of pages 56-70. To avoid further confusion in this record, I have discarded the extra copy of these pages.

John Kenny, Esq., was then called as a witness.  *Id.*, p. 66.  Mr. Kenny worked in Ms. Gentry's office at the time, and took over the representation of Petitioner from Ms. Gentry, with Petitioner's consent, when he left her office.  *Id.*, p. 67.  Mr. Kenny testified that Petitioner "was quite confident that Mr. Merritt was going to accept responsibility with Mr. Coggins, I believe it was, that they had committed the robberies, that he [Petitioner] was nowhere around at the time of committing the robberies and that they would exonerate him."  *Id.*, pp. 69-70.  Kenny was aware of Gentry's difficulties with Merritt, and that she had sought a show cause order.  *Id.*, p. 69.  According to Kenny, he was unsuccessful in trying to serve a subpoena upon Merritt.[8]  *Id.*, p. 69.  Kenny said that despite his best efforts, he was unable to locate Merritt.  *Id.*, p. 71.

The record shows without dispute, therefore, that it is doubtful that Petitioner told his trial attorney that Merritt would have testified that he (Petitioner) was not involved in the robbery.  Instead, it is probably just as Mr. Kenny testified, that Petitioner told him that Merritt would have confessed to the crime and would have exonerated Petitioner. Either claim is highly improbable.  If Merritt had indeed been an accomplice in the robbery, as Petitioner so stated in his confession, Merritt probably wanted no part of the case after his charges were dropped.  Merritt certainly would not have confessed to exonerate Petitioner.  On the other hand, if Merritt had been falsely accused by Petitioner of having been an accomplice in the robbery, he likewise would naturally have had no desire to be a part of Petitioner's case.  Petitioner has failed to show prejudice to

---

[8] This was probably a trial subpoena as Gentry had served Merritt with a subpoena for deposition.  It is unknown what happened to the attempt to depose Merritt.

the outcome, given the improbabilities of this witness having been a favorable witness for Petitioner.

Further, attorney error has not been shown. Both Gentry and Kenny did their best to get evidence from Merritt. Petitioner did not produce Merritt at the Rule 3.850 hearing, and thus he failed to develop an essential factual basis for his claim. With exceptions not applicable here, Section 2254(e)(2) provides that "if the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim . . . ." Petitioner's attorney cannot be faulted when Petitioner has failed to prove in state court what Merritt might have said. It should not have been too difficult for Petitioner at least to have obtained an affidavit from Merritt. After all, Merritt is Petitioner's relative. Ground two, therefore, affords no relief.

**Ground three, case number 98-3153-AF**

Petitioner asserts that his trial attorney was ineffective because he failed to object to inappropriate closing argument, and failed to seek a curative instruction or a mistrial. Petitioner argues that the prosecutor improperly drew attention to the fact that Petitioner remained silent and did not call any witnesses. Respondent concedes that state court remedies were exhausted as to this claim. Doc. 12, p. 35.

The trial court rejected this claim, finding:

> There was no improper argument. The state can properly stress what is affirmative proper evidence. He can argue the other "what ifs" amount to speculation. He can point out unrebutted testimony, including that of Karen Brown, as an argument to support her credibility. The defendant is entitled to remain silent and not have this silence infer guilt. He is not entitled to the inference that a witness who testifies is not credible when the only other witness to the event is a defendant who remains silent. The

> argument quoted is proper argument, and is clearly within the law, which law is fully spelled out in the final instructions. There was no improper shifting of the burden of proof or commenting on defendant's failure to testify.

Ex. I, R. 326.

Petitioner did not describe the argument that he claims to have been objectionable in his § 2254, but he did so in his Rule 3.850 motion. He identified the following as improper argument from the trial transcript: Transcript pp. 231, lines 9-12; 233-234, lines 15 to 2; 234, lines 16-23. Ex. I, R. 191-192.

"The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." Bertolotti v. State, 476 So. 2d 130, 134 (Fla. 1985); Dessaure v. State, 891 So. 2d 455, 468 (Fla. 2004). "Merely arguing a conclusion that can be drawn from the evidence is permissible fair comment." Mann v. State, 603 So. 2d 1141, 1143 (Fla. 1992).

While it is improper to comment on the failure of a defendant to testify, there are occasions when argument leading to that suggestion is permissible because it was invited. Brown v. State, 771 So. 2d 603 (Fla. 4th DCA 2000). In Brown, the defendant was charged with first degree murder of his girlfriend. She was found dead in the bed she shared with him "shot in the middle of her right eyebrow from a distance of two to six inches." 771 So. 2d at 604. The defendant argued that the death was a suicide. *Id*. The defendant did not testify. In closing argument, the prosecutor said:

> Was a crime committed? Or has it been argued to you, that [Widder's] death was a suicide. That's a nice argument, but [there was] no evidence to support that in any way, shape or form that you heard in this case. Nobody, nobody testified that [Widder's] death was a suicide.

On appeal, it was argued that since the defendant was the only possible witness to describe what had happened, a comment on the lack of evidence was a comment on his right to remain silent. *Id*. The court rejected this claim, reasoning:

> [T]he prosecutor's comments here were permissible as an invited response. A narrow exception to the rule forbidding a comment on a defendant's failure to testify applies where the prosecution's statement is invited by the defense. In this case, the record shows that defense counsel argued throughout the entire trial that Widder's death was a suicide. Specifically, he commented in opening argument that the evidence would show that she committed suicide, and also commented during both opening and closing arguments that the evidence would show that the medical examiner could not definitively determine whether her death was a homicide or suicide. In light of those arguments by the defense, we conclude the prosecutor was justified in commenting on the lack of evidence of suicide.

771 So. 2d at 605-606 (citations omitted).

All of the argument that is cited in this court for this claim of ineffectiveness was in rebuttal, after Petitioner's attorney had finished his closing argument. Ex. B, trial transcript, pp. 216-227. Petitioner's attorney argued:

> There are no details she [Investigator Brown] provides. She doesn't say that [Petitioner] provides her anything that she didn't already obtain from [the victim] or from the people in Monticello.
>
> Well, is that really that big a deal? It is, folks, and here's why. *It's her word against his*. . . .
>
> Let's go back. Does it make a big deal that she [Brown] doesn't provide those details and does it make a big deal that *it's her word against his*?

*Id*., p. 220 (emphasis added).

The first passage as to which Petitioner now objects followed a section during which the prosecutor revisited the testimony of Investigator Brown concerning the details of Petitioner's confession. Ex. B, trial transcript, p. 229. He pointed out that

Investigator Brown did not rely upon her memory; she wrote down what Petitioner said. *Id*., pp. 229-230. He then brought up the issue of Petitioner's "attempted suicide," and said: "What do we really know about any attempted suicide?" *Id*., p. 230. He noted that there was no evidence about who reported the attempted suicide, and whether anyone was told about any pills. *Id*. He said:

> So all these questions that Mr. Kenny [Petitioner's attorney] is raising, where is that coming from? Nobody has testified that pills were used. Nobody has testified that defendant appeared to be under the influence. Nobody has testified that he was threatened. Nobody testified that he attempted to commit suicide. Nobody saw him attempt to commit suicide.

*Id*., pp. 230-231. The prosecutor said that "[t]he most anyone saw was scratches on his wrists and he didn't even explain those. In fact, when he was asked by the EMT and by Ballenger at the jail, he said he hadn't tried to commit suicide." *Id*., p. 231. The prosecutor then said:

> What other details? That was his next point, what other details? *He didn't or Investigator Brown didn't testify* to what happened in the rest of the hours in between the event and the arrest.
>
> Well, what other details are there? I mean, what else do you want her to talk about? She told you about what he said and it is confirmed by what the evidence is.

*Id*. (emphasis added). Petitioner relies upon in part upon this passage for his claim. This was a slip by the prosecutor. The portion of the argument italicized above was headed in an improper direction, trying to combine a comparison between evidence from Brown, who testified, and evidence from Petitioner, who had made statements but did not testify. But the prosecutor realized the problem and immediately corrected the error, focusing only upon Brown, who was the only one to have testified. In context, there was little for Petitioner's attorney to fault, especially since he had set up the

dichotomy, "his word against hers," in his own argument. Further, all of the argument by the prosecutor to that point had focused upon what Brown and others (the EMT and Ballenger) had said that Petitioner had said *at the jail* about his attempted suicide. A failure to object at this point was not attorney error, since an objection might have drawn unwanted attention to the fact that Petitioner had not testified.

The second passage that Petitioner claims was objectionable was when the prosecutor cautioned the jury to use its common sense, not speculate, and asked whether they had heard any evidence that Petitioner got the check "from a crack area." *Id*., p. 233. The prosecutor said: "You have not heard one shred of evidence from this witness stand that the defendant got that check from anywhere other than [the victim's] purse. The only evidence you've heard is it came from [the victim's] purse to him, not from some crack area." *Id*., pp. 233-234. There was nothing objectionable about this argument. The prosecutor was simply referring to a lack of evidence for a defensive theory. The evidence as to where Petitioner obtained the check could have come from anyone, including witnesses in that "crack area." It did not have to come just from Petitioner. This was not a comment upon Petitioner's right to remain silent.

Finally, the prosecutor argued:

> But the last thing I want you to think about is two or three times [Petitioner's attorney] said this is her word versus his word. Her word versus his word. He [Petitioner's attorney] said that two or three times.
>
> Ladies and gentlemen, it's her word. The evidence you heard today came from Investigator Brown. That's the evidence that's before you. Make your decision based on the evidence that's before you.

*Id*., p. 234. This was not improper argument either, as the trial court found. The prosecutor was simply responding to the way Petitioner's attorney had framed his

argument, that it was his word against hers. In summary, therefore, Petitioner has not shown that the state court's adjudication of the merits of the federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Ground three, therefore, affords no relief.

**Ground four, case number 98-3153-AF**

Petitioner argues that his attorney was ineffective because he introduced damaging evidence during cross examination and erred in closing arguments. In particular, he faults counsel for suggesting that he "received the check from a drug infested area . . . ." Doc. 6, p. 5.

Petitioner's attorney withdrew this claim at the Rule 3.850 hearing. Ex. J, transcript of the Rule 3.850 hearing, p. 5. She said that she could not, in good conscience, proceed with that claim of ineffective assistance because "it's clear from the record it was a strategy decision." *Id*. Since the claim was not fairly presented to the state court and is now procedurally defaulted, Petitioner must show cause and prejudice for the default before this court may reach the merits of ground four. Petitioner has not done so. *See supra*, n. 6. Therefore, this court cannot reach the merits of ground four.

**Ground five, case number 98-3153-AF**

Petitioner contends his lawyer was ineffective in failing properly to impeach Sergeant Clara Reams with prior inconsistent statements and failing to move portions of her deposition into evidence. Sergeant Reams was called as a witness for the defense to establish that Petitioner was on suicide watch and very sick before and after his confession to Investigator Brown. She was also called to establish that when Brown

interviewed Petitioner, she was accompanied by an unknown male, who assisted in the questioning of Petitioner, and that Brown never left the interview room. Doc. 6, p. 6. Respondent concedes exhaustion of state court remedies and addresses the merits. Doc. 12, p. 45.

Sergeant Reams testified that she escorted Petitioner to the interview room. Ex. B, transcript of the trial, p. 181. When asked by Petitioner's attorney if another gentleman was with Investigator Brown, she said:

> I remember seeing the other gentleman with her when she came into the jail, but now whether or not he was in there with her at that time, I'm not sure. I don't know.

*Id*., pp. 181-182. *See also* p. 187. She said that during the 30 minute interview, Brown and Petitioner came out, and Reams was going to take Petitioner back to his cell, "but he wanted to talk to her again." *Id*., p. 182. Regarding Petitioner's illness, Reams testified that before the interview, Petitioner told her several times that his stomach was hurting and she could see that he was in pain, and after the interview, Petitioner vomited. *Id*., p. 181, 183.

Petitioner's attorney, on redirect, showed Sergeant Reams her deposition and asked if it refreshed her recollection. *Id*., p. 188. Reams read the particular part of her deposition, and she said that she remembered those statements. *Id*., R. 189. She agreed that the statement in her deposition was that "essentially there were two people in the room." *Id*., p. 190. Sergeant Reams explained: " I feel like at that time [that is, when she was giving her deposition] I remember [ed] seeing the gentleman in the room. Now, whether it was during the whole time or not, I'm not sure." *Id*. She said she was sure he was in the room, but did not know if he stayed. *Id*. After being shown her

deposition testimony regarding how Petitioner exited the room, she said that "if I remember correctly, he [Petitioner] stepped out of the room to the water fountain which is to the right of the room. Investigator Brown had come out first and he asked to talk to her again." *Id*., p. 191.

The trial court found this ineffectiveness claim to have been refuted by the record because "[t]his topic was reasonably covered and explored by trial counsel." Ex. I, R. 326. This determination is fully supported by the record. "[A] discovery deposition is not intended as an opportunity to perpetuate testimony for use at trial, is not admissible as substantive evidence at trial, and is only admissible for purposes of impeachment." Blanton v. State, 2008 WL 657832, *4 (Fla. Mar 13, 2008) (No. SC04-1823); State v. Lopez, 974 So.2d 340, 350 (Fla. 2008). The deposition here was used to the extent that it could have been used, to refresh the witness's memory, and to show that the witness had testified differently at an earlier time. Petitioner's attorney did not want to significantly damage the credibility of Sergeant Reams, as she gave favorable testimony. He simply wanted to see if he could improve her testimony, and he did so quite well, under the circumstances. Petitioner has not shown that the state court's adjudication of the merits of the federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground six, case number 98-3154-AF**

This claim is directed to case number 98-3154-AF, the case in which Petitioner entered a nolo contendere plea for an offense committed on July 28, 1998, after having been convicted for the purse snatching incident on July 31, 1998, in case number 98-

3153-AF.  Petitioner contends his attorney erred in failing to interview Mamie Jackson.

Petitioner contends that she would have testified that "on the morning of July 28, 1998,

the date and time of the allege crime.  The defendant was with her at her home and at

no time did the defendant leave her presence."  Doc. 6, p. 7 [sic].  Petitioner contends

that had this alibi witness been discovered and used, he would not have entered a plea

to these charges, but would have gone to trial.  Respondent agrees that this claim was

presented to the state courts and addresses the merits.

This claim was raised as ground F of Petitioner's Rule 3.850 motion.  Ex. I, R.

203.  The trial court did not mention this claim in its order denying this motion.  *Id.*, R.

322-327.

At the Rule 3.850 hearing, Petitioner's trial attorney, Mr. Kenny, testified that he

knew about Mamie Jackson from Petitioner and from Petitioner's former attorney, Ms.

Gentry.  Ex. J, transcript, p. 73.  Petitioner did yard work for Ms. Jackson, and Kenny

said that the "hope was that she would be able to provide an alibi that he was there

working at her home – and he had indicated that he had done yard work for her from

time to time – and that he was working there at the time of the robbery . . . ."  *Id.*  Kenny

said he had difficulty getting into contact with Ms. Jackson.  *Id.*, p. 74.  Kenny said he

was never able to speak with her, but she did bring a handwritten note to his office.  *Id.*

Kenny could not find the note in his files, but he recalled that Ms. Jackson said that

Petitioner had been at her residence that day, "but it was much earlier in the day [than]

when this particular event occurred with [the victim of the first purse snatching]."  Kenny

said that Ms. Jackson said that Petitioner had been at her residence "five or six hours

prior to the event [the offense] occurring."  *Id.*  "And that after that, he [Petitioner] left the

house and she had not seen him since . . . ."  *Id*.  Kenny gave the information to his investigator, Mr. Hurley, who spoke with Ms. Jackson and confirmed the details provided in her written note.  *Id*.  Kenny concluded from this that he could not "in good faith" use Ms. Jackson as an alibi witness.  *Id*., p. 76.

This is the only evidence on this subject, and it is now undisputed.  Since Ms. Jackson could not testify as to where Petitioner was at the time of the crime, she was not an alibi witness at all.  Neither attorney error nor prejudice to the outcome has been shown as to this ground.

**Ground seven, case number 98-3154-AF**

Petitioner contends that his plea in this case was not knowing and voluntary because the state court failed to establish a factual basis for the plea and because Petitioner did not understand the elements of the charge against him.  Doc. 6, p. 8. Respondent acknowledges that this claim was fairly presented to the state court and addresses the merits.  Doc. 12, p. 52.

The claim as presented in this court is insufficient.  Petitioner fails to allege the specific errors of counsel that caused him to plead guilty.  "Conclusory allegations of ineffective assistance are insufficient."  Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (drug quantity at sentencing, failure to allege specific facts), *quoting*, United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991) (same); Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986) (defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel); Bolder v. Armontrout, 921 F.2d 1359,

1363-1364 (8th Cir. 1990), *cert. denied*, 502 U.S. 850 (1991); United States v. Vargas, 920 F.2d 167, 169-170 (2d Cir. 1990), *cert. denied*, 502 U.S. 826 (1991).

Petitioner's Rule 3.850 motion, though more detailed than the current petition, was still vague and conclusory. Petitioner claimed that his plea was involuntary because the trial court failed to establish a factual basis for the plea and, had the court done so, he would have been "aware of what actually constituted the charges of burglary and robbery." Ex. I, R. 205. Petitioner did not allege what his confusion was. Petitioner claimed his attorney "misadvised him of the nature of the charges against him and misadvised him of the elements of the crimes charged." This again is a conclusion without specifics. Petitioner did not describe the advice given, or allege how it was wrong. Petitioner alleged that his attorney misadvised him that because he attempted to pass the checks in the case that went to trial (and he was convicted), he would also be found guilty in this second case. Petitioner contended this was incorrect advice, but did not explain how except to say that he should have been told that the second case had nothing to do with the first. Consequently, this claim should be summarily denied as vague and conclusory, without sufficient supporting allegations.

Alternatively, the court should find that Petitioner has not shown that the state court's adjudication of the merits of the federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). The state court denied this claim, finding that Petitioner's attorney, Mr. Kenny, "discussed case 98-3154 for hours with the defendant after he was found guilty by the jury in case 98-3153. The defendant acknowledged on his plea form that his attorney had explained

what the state would have to prove and discussed possible defenses, and that he was satisfied with his attorney's advice." Ex. I, R 327. The court further found that Petitioner was not credible as to this claim. Petitioner has not come forward with clear and convincing evidence to rebut the presumption that these factual determinations are correct. 28 U.S.C. § 2254(e)(1). For these reasons, ground seven affords no relief.

**Ground eight**

Petitioner argues that due to the errors alleged in grounds one through five in case number 98-3153-AF, his plea in case number 98-3154-AF was involuntary. Respondent addresses the merits of this claim. Since grounds one through five are without merit, this claim is likewise without merit.

**Ground nine**

Petitioner claims that he was denied effective assistance of counsel because his attorney did not request a hearing on sentencing as a prison releasee reoffender in both case numbers 98-3153-AF and 98-3154-AF. Doc. 6, p. 10. He contends that the statute authorizing this kind of sentencing does not apply to persons who were released from prison prior to the effective date of the Prison Releasee Reoffender Act on May 30, 1997. *Id*. Apparently Petitioner's release from prison was on October 19, 1995. Doc. 12, p. 66. The claim was raised in Petitioner's Rule 3.850 motion, Ex. I, R. 208, but the trial court did not address it in its order denying that motion. Respondent addresses the merits of the claim. *Id*.

Petitioner does not identify the claim that his attorney might have made, and therefore, this claim of ineffective assistance of counsel is insufficient for the reasons discussed above. Further, had Petitioner's attorney argued that under Florida law,

Petitioner could not be subjected to prison releasee reoffender sentencing, the argument would have failed. The Act became effective on May 30, 1997, before Petitioner committed the current offenses, and therefore applied to him. Plain v. State, 720 So.2d 585, 586 (Fla. 4th DCA 1998), *review denied*, 727 So.2d 909 (Fla. 1999) ("Appellant was released from prison *before* the Act became effective, and *was convicted in this case for a crime which occurred on August 4, 1997*. He comes within the language of the Act because he committed a felony enumerated in the Act within three years of being released from a state correctional facility.") (emphasis added).

Had his lawyer argued that application of the Act to him, a person who was released from prison before the Act took effect, was a violation of the federal Ex Post Facto clause, the argument would have failed.

> We conclude that the Act [The Prison Releasee Reoffender Act] is not being unconstitutionally applied to appellant as an ex post facto law. In this case, the Act increases the penalty for a crime committed after the Act, based on release from prison resulting from a conviction which occurred prior to the Act. It is no different than a defendant receiving a stiffer sentence under a habitual offender law for a crime committed after the passage of the law, where the underlying convictions giving the defendant habitual offender status occurred prior to the passage of the law. Under those circumstances habitual offender laws have been held not to constitute ex post facto law violations. *Reynolds v. Cochran*, 138 So.2d 500 (Fla. 1962); *Cross v. State*, 96 Fla. 768, 119 So. 380 (1928); *Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948) (a habitual offender sentence is not an additional penalty for the earlier crime, but rather a stiffened penalty for the latest crime, which is an aggravated offense by virtue of the repetition); *McDonald v. Commonwealth of Mass.*, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901) (a statute which imposes a punishment only on future crimes is not ex post facto, notwithstanding that a conviction prior to the statute results in increased punishment).

Plain v. State, 720 So. 2d at 586. Ground nine is without merit.

**Conclusion**

Accordingly, it is **RECOMMENDED** that the 28 U.S.C. § 2254 petition for writ of habeas corpus filed by James R. Pleas, Sr., challenging his convictions in case numbers 98-3153-AF and 98-3154-AF, in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on April 29, 2008.

**s/ William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**